suit brought, such obstruction could cause no real or substantial injury to the complainant. In order that a plaintiff may succeed in an action of this kind, he must show that he has suffered or will suffer substantial injury, for which he would be entitled to recover damages at law. A court of equity will intervene when the injury complained of is undeniably a nuisance, and irreparable injury will ensue. Richeson v. Richeson, 8 Ill. App. 204. See, also, for general principles applicable to an action of this kind, Callanan v. Gilman, 107 N. Y. 360, 14 N. E. 264; Buchholz v. Railroad Co., 148 N. Y. 640, 43 N. E. 76. In accordance with these views, findings and judgment may be prepared dismissing plaintiffs' complaint, with costs.

Complaint dismissed, with costs.

---

(63 App. Div. 72.)

BLOOMINGDALE et al. v. SOUTHERN NAT. BANK OF NEW YORK.

(Supreme Court, Appellate Division, First Department. July 9, 1901.)

1. ACTION FOR FRAUD—PLEADING—EVIDENCE.

Where plaintiffs paid a note of a third person, held by defendant bank, which was marked "Paid" and delivered to the maker, and a new note given to plaintiffs, together with the security of the old, plaintiffs cannot recover the money so paid from defendant,—the security proving almost worthless and fraudulent,—in the absence of allegations and proofs that the defendant's president, in representing that the loan represented by the note was good, and the certificates of whisky in warehouse securing it were all right, did so fraudulently, or with knowledge that they were false, or with any intent to defraud plaintiffs.

2. CONTRACTS—RESCISSION—RESTORING CONSIDERATION—NECESSITY.

Plaintiffs, not having tendered the note surrendered by the bank, or the certificates securing it, to the bank, and demanded a return of the money, cannot rescind the contract and recover the money paid from the bank on the ground of fraud.

3. SAME—SUFFICIENCY.

A statement by plaintiffs' agent to defendant's president that the whisky represented by the certificates was bogus, and that he was sorry to return such whisky to him because it was bogus, and asking for a return of the money paid, was not a sufficient tender of a return of consideration to entitle plaintiffs to rescind and recover the money.

4. SAME—DIRECTING VERDICT—UNCONTRADICTED EVIDENCE.

Where, in an action against the bank to recover the money paid, the testimony of two persons in plaintiffs' employ, and who conducted the purchase, was the only evidence as to representations of defendant's president that the loan was good and the warehouse certificates were all right, and such president was dead, it was not error to instruct that if the jury believed the testimony of such witnesses, and that the statements of the president were false, plaintiffs were entitled to recover, instead of directing a verdict in plaintiffs' favor on the theory that the testimony was uncontradicted.

Appeal from trial term.

Action by Lyman G. Bloomingdale and another against the Southern National Bank of New York. From a judgment in favor of defendant, plaintiffs appeal. Affirmed.

Argued before VAN BRUNT, P. J., and PATTERSON, O'BRIEN, INGRAHAM, and LAUGHLIN, JJ.

S. Livingston Samuels, for appellants.

B. F. Einstein, for respondent.

INGRAHAM, J.    The facts upon which the claim of the plaintiffs arose are as follows:    Prior to December, 1895, the defendant had discounted a note made by the Belle of Nelson Distillery Company for $5,000, which seems to have been indorsed by H. D. Nessber & Co., and secured by what purported to be certificates of the maker of the note that certain whisky had been deposited in its warehouses, which was to be delivered to the holder of the certificates.    Some time before the makers were notified that the note had to be paid at maturity, and a Mr. Johnson, who was the vice president of the maker of the note, was introduced to the financial manager of the plaintiffs by a Mr. Nessber, a connection of one of the plaintiffs, who was an indorser on the note, and requested the plaintiffs to take the loan of $5,000 "off the hands of the Southern National Bank," stating that "there was a collateral note which attached 500 barrels of Belle of Nelson whisky of 1893."    The manager of the plaintiffs said that he would investigate, and subsequently instructed a clerk of the plaintiffs to go to the bank.    Bamberger, the clerk, then went to the bank and saw the president.    This was a few days before December 12th, when the note became due.    Bamberger testified that he told the president that he represented the plaintiffs; that—

"Mr. Johnson, the vice president of the Belle of Nelson Distillery Company, had called upon us and told us that he had a loan of $5,000 maturing at the bank on December 12th; that this note had attached to it as collateral certificates for 500 barrels of whisky, and I was very anxious to know what he knew about this whisky, as we knew comparatively little about it.    Rosenwald told me that he knew these certificates to be all right in every respect; that, if sold at auction, they would realize ten dollars per barrel; and that he knew of no better investment than that.    I incidentally remarked to him why it was they did not renew the loan themselves, and he said his reserves had fallen too low to permit him to do so."

This conversation was reported to the plaintiffs' manager, who testified that he subsequently called upon Rosenwald, the president of the bank; and his testimony as to the interview is as follows:

"I went into his office, which was in the back room of the bank, and said, 'Mr. Rosenwald, there is a loan due of the Belle of Nelson Distilling Company in your bank of $5,000, and I understand there are 500 barrels of whisky as collateral with this loan, and I am asked by Mr. Johnson whether I would care to take it off your hands; and I would like you to tell me, please, what you know of the certificates, and if everything is all right;' and he answered, 'Mr. Kraus, there is no better security in the city of New York.    I know it is perfectly good in every respect, and you are perfectly safe in making this loan, and, was it not for the reserve of the bank being somewhat short, I would make the loan myself again;' and I said, 'Mr. Rosenwald, I know nothing about this whisky, except 50 barrels of whisky which I had some trouble in getting from Louisville, and I am somewhat afraid that if everything is not all right I wouldn't make that loan;' and he said, 'You are perfectly safe, and I am positive that everything is all right, and you can do it, and it is a safe note.' "

The president of the defendant then produced and showed to the plaintiffs' manager the certificates, which called for 500 barrels of whisky.    On December 12th, the day that the note became due, the plaintiffs directed Bamberger to go down to the bank, take up the

loan, and bring back the certificates, giving him a check for $5,000 for that purpose. Bamberger, upon the delivery of the check, received the note from the Southern National Bank and the certificates in question. This note was stamped by the bank as paid. The certificates certified that there had been deposited in the bonded warehouse of the company 500 barrels of whisky, deliverable only upon the return of the certificates properly indorsed, and on payment of the state and government taxes which might be due on said whisky, and storage charges. The plaintiffs, before they sent to the defendant, had received from Johnson a new note of the distillery company, indorsed by H. D. Nessber & Co.; and the note held by the defendant was returned to the maker, the indorsement thereon being canceled. Subsequently it appeared that this distillery company had issued fraudulent certificates, and that the various certificates which purported to represent 500 barrels of whisky, upon which the plaintiffs made the loan complained of, in reality represented but 43 barrels; that being all that the plaintiffs had ever obtained from the distillery company upon those certificates. After the plaintiffs had information of the fraud committed by the maker of this note, they sent Bamberger to Louisville to ascertain whether the certificates were good or bad. They employed a firm of lawyers at Louisville, and left the matter in their hands. Subsequently it appeared that certificates for 43 barrels of whisky represented actual whisky, but the rest of the certificates did not. The plaintiffs then surrendered the certificates for the 43 barrels, and received the whisky represented by them, and subsequently sold that whisky and received the proceeds. There is no allegation in the complaint, nor was there the slightest evidence to show, that, if the president of the bank made the representations testified to, he did so fraudulently, or with knowledge that they were false, or with any intent to defraud or deceive the plaintiffs. So far as the action is sought to be sustained as an action to recover damages for deceit, neither the allegations of the complaint nor the proof would justify the court in submitting any question to the jury.

The plaintiffs claim that they were entitled to rescind the transaction, and recover back the amount paid for the note. The complaint, however, did not allege a rescission. There was no allegation that the plaintiffs tendered the note and certificates back to the bank, and demanded a return of the money they had paid. The transaction between the plaintiffs and the bank seems to be a payment of the note by the maker from the proceeds of a discount of a new note by the plaintiffs. The note which had become due and was held by the defendant was stamped "Paid" by the defendant, and in that condition received by the plaintiffs without objection, and delivered to the maker. The transaction was in effect a payment of the note by the plaintiffs as the agents of the maker; the defendant at the time transferring to the plaintiffs, as such agents, the securities which it had held as collateral. It is somewhat difficult to see what there was to rescind, or upon what basis the plaintiffs could recover from the defendant the money paid by the maker of the note to discharge its indebtedness. In the absence of evidence of fraud which would sustain

an action for deceit, I do not see how any action can be maintained against the bank which would entitle the plaintiffs to recover from it money which the maker of this note had paid to discharge its indebtedness. But, assuming that there was something that could be rescinded, the bank had a right, before the plaintiff could insist upon such a rescission, to have tendered back all that plaintiffs had received from the bank, and to be put again in the same position that it would have been in if the transfer had not been made. There is no pretense that this was done. The note that was delivered by the bank to the plaintiffs was never tendered to the bank. By the act of the defendant in accepting the note as paid, and not protesting it for nonpayment, the indorser was discharged; and then the certificates, which represented 43 barrels of whisky, do not appear to have been tendered to the bank. That whisky was received and actually sold by the plaintiffs. Nothing is better settled than that, where a party has a right to rescind a contract upon the ground of false or misleading misrepresentations, he must make his election promptly upon discovering the fraud, and must tender back to the other party all that he has received under the contract which he seeks to rescind. The only evidence of any tender to the defendant is contained in the testimony of Bamberger. He says that after he returned from Louisville, where he had been informed by the assignee of the Belle of Nelson Company—

"That our five hundred barrels of Belle of Nelson whisky were bogus, I told Mr. Rosenwald, 'I am sorry to return to you the five hundred barrels of whisky because they are bogus, and I want you to return our $5,000 to me.' I had the certificates and note with me. Mr. Rosenwald then said, 'Why, I have almost lost $20,000 on these people, and you will have to take your medicine, the same as I will.' That ended the interview."

This evidence was stricken out as not within the pleadings; but, if allowed to stand, it would not have entitled the plaintiffs to recover. The court, after striking out this testimony, denied the motion of the defendant to dismiss the complaint, although without it there was clearly no cause of action alleged or proved, and submitted to the jury the question whether or not they believed the witnesses Kraus and Bamberger as to the representations made by the president of the defendant, and instructed the jury that if they believed that testimony, and believed the statements made were false, the plaintiffs were entitled to recover. The jury found a verdict for the defendant, thus refusing to credit this story of the alleged interviews with the president of the defendant. The plaintiffs attack this direction upon the ground that the court should have directed a verdict in their favor, as the jury were bound to believe the testimony of Kraus and Bamberger, it being uncontradicted. We think that, with the testimony of Kraus and Bamberger, no cause of action was found. But, assuming that a cause of action was proved, this direction was not error. There is no evidence that any representations were made of any kind, except the testimony of Kraus and Bamberger. Kraus was the manager of the finance department of the plaintiffs' business, and was the one who made the arrangements by which the new notes were discounted, and the old notes held by the defendant paid. He was di-

rectly interested in the transaction, and there was evidence making it doubtful whether he ever really went to the bank at all. The president of the bank is dead, and thus unable to contradict the testimony of either of these witnesses as to anything that they say about him. The other witness, Bamberger, is a clerk in the plaintiffs' employ, under Kraus, and he still continues in that position. Neither of these witnesses could be said to have been disinterested, and considering the fact that the president of the bank is dead and unable to contradict them, that they both held positions under the plaintiffs which could be terminated at any moment if they should fail to give satisfactory testimony, and that the transaction by which the plaintiffs have lost this $5,000 was undertaken by Kraus and assisted through by Bamberger, the truth of the testimony of these witnesses was properly submitted to the jury; and, the jury having refused to credit them, I should not be at all inclined to disturb their verdict.

I think, on the whole case, no error was committed which would justify a reversal, and the judgment and order denying a new trial should be affirmed, with costs.

VAN BRUNT, P. J., and O'BRIEN, J., concur; PATTERSON and LAUGHLIN, JJ., in result.