LUSI AQUINO, ADMINISTRATRIX AD PROSEQUENDUM OF SABINO AQUINO, DECEASED, APPELLANT, v. THE MORRIS COUNTY TRACTION COMPANY, RESPONDENT.

Submitted December 9, 1918—Decided March 3, 1919.

A pedestrian who attempts, at a public crossing, to cross the tracks of a trolley railway, laid, not in a public street or highway, but on what is obviously its private right of way, is under a duty to first look out for an approaching car, and if he neglects this duty and is run into in consequence, there can be no recovery. *Merkl* v. *Jersey City Railway Co.*, 75 N. J. L. 654, distinguished.

On appeal from the Morris County Circuit Court.

For the appellant, *Colby, Whiting & Moore.*

For the respondent, *King & Vogt.*

The opinion of the court was delivered by

WHITE, J. Plaintiff's intestate, Sabino Aquino, was struck and killed by defendant's trolley car running (at the rate of "about fifteen miles an hour") eastward upon its private right of way between Denville and Boonton, shortly after ten o'clock of the night of June 24th. The track is ballasted with stone between and eighteen inches each side of the rails, thus plainly indicating that it was not a public highway for pedestrian travel. The motorman, who was the only eyewitness

234    COURT OF ERRORS AND APPEALS.

Aquino v. Morris County Trac. Co.    .    93 N. J. L.

of the accident, testified that Aquino when struck was sitting crouched over with his head between his knees on the inside rail of the track upon which the car was running, about forty feet beyond or eastward of a public road crossing, at which there was a sign suspended marked "Trolley Station;" that in approaching this crossing he (the motorman) blew his whistle six hundred feet before reaching it, and saw by the light of his headlight when two hundred and fifty feet away that there was no one at the crossing; that then, in pursu-. . ance of standing orders, he switched off the headlight to avoid blinding an automobile approaching in the opposite direction upon a public street running parallel with and adjacent to defendant's right of way, and as he reached the crossing switched it on again, when, for the first time, he saw Aquino sitting a car's length ahead, as above described. The car was stopped about one hundred and sixty feet beyond the crossing and the mangled body taken from under its rear truck. Passengers on the car testified to the search for the body and to finding a cap and a bunch of keys and a watch and blood along the track at points tending in a general way to corroborate the motorman's statement as to Aquino's position when struck, but other witnesses, who made an examination next morning, but took no measurements, testified to finding blood nearer toward the crossing than that position. There was a slight curve (of about two thousand feet radius) in the track as it approached the crossing going east, and the right of way had high weeds between the tracks, but to a person at the crossing an approaching car was in plain unobstructed view for at least a quarter of a mile.

The learned trial judge directed a verdict for the defendant, and in this, we think, he was right. If the deceased when struck was where the motorman said he was, he was a trespasser, and there was no evidence of circumstances in the case upon which liability could be predicated. If he was at the crossing waiting for a trolley, it was his duty to stay in a place of safety as the car approached and not to place himself directly in its track. If he was crossing the track at the public crossing it was his duty to look for an approaching car

MARCH TERM, 1919. 235

*93 N. J. L.*        Aquino v. Morris County Trac. Co

before doing so, and if he had looked he would have seen this car, for it was fully lighted, as the evidence shows, even while the headlight was switched off, and there was nothing to obstruct his view.

The case is entirely different from *Merkl* v. *Jersey City Railway Co., 75 N. J. L.* 654, where the trolley car which struck and killed a man at night was running along and on a public street, where the man also had a right to be. This court there said that it could not be held, as a matter of law, in the absence of proof of negligent conduct, that it was contributory negligence for the man to be where he had a right to be. In the present case, the man's right, assuming that he was at the public crossing, was to cross defendant's private right of way *after looking out for an approaching car.* It was the obvious failure to perform this accompanying duty to look, which, under that assumption, caused the accident.

The judgment is affirmed.

KALISCH, J. (dissenting). My dissent in this case is based upon two grounds—*first,* there was evidence from which a jury could have properly found that the plaintiff's intestate was struck while crossing the tracks of the company at a public crossing. There was evidence of blood spots found within two or three feet of the crossing. There was testimony to the effect that no warning or signal was given of the approach of the car to the crossing, and that it was going at great speed; that the motorman dimmed his headlight when he was two hundred and fifty feet from the crossing and never put it on again until he reached the crossing.

A *prima facie* case of negligence was made out against the defendant company, which entitled the plaintiff to have the cause submitted to the jury for its determination.

The prevailing opinion of the court is, unfortunately, silent on this point, and disposes of the controversial questions in this fashion: "In the present case, the man's right, assuming that he was at a public crossing, was to cross defendant's private right of way *after looking out for an approaching car.*

It was the obvious failure to perform this accompanying duty to look, which, under the assumption, caused the accident."

And the writer of the opinion attempts to distinguish the present case from *Merkl* v. *Jersey City Railway Co.*, 75 N. J. L. 654, in that, in the case cited, the injured person was where he had a right to be, whereas here the deceased was crossing a private right of way at a public crossing, and therefore was under a duty to look for an approaching car. It is an unwarranted assumption that the deceased was without legal right on the public crossing. The right of the company to cross the public highway is not superior to the right of the public. The deceased, if he was on the public crossing when he was struck, was where he had a lawful right to be for the purpose of crossing the track. He was under no greater duty to care for his personal safety than a person crossing a public street. The legal rules applicable to railroads under the General Railroad act, in operating on its private right of way and over public crossings, do not apply to trolley cars, even though the latter are operated on private right of ways. In the absence of any statute or ordinance on the subject the common law must govern. That being so, there was a duty cast upon the defendant to use reasonable care that proper warning should be given in approaching public crossings. A failure to do this constitutes negligence. Whether or not a proper and adequate warning was given was a jury question.

It is, therefore, clear that no perceptible difference in legal principle exists between the Merkl case and the one *sub judice*.

The attempt to distinguish between the two cases, on principle, necessarily fails, and leads to arbitrarily fixing one rule of prudent conduct to be observed in the use of a public highway in the country and a different rule in the city.

While it is true that the degree of care to be used is measured by the danger to be anticipated to the traveling public in the use of a public crossing, and while in cities the crossings are more frequently used than in sparsely settled communities, nevertheless, the observance of ordinary care

is not lessened in the country from what is required in cities, though the conditions in the latter communities call for a more frequent and higher exercise of such care.

Thus, it is plain that the question whether the motorman under the circumstances exercised ordinary care was a jury question.

The opinion of the court practically disposes of the case on the theory that the only proper inference that could be drawn from the evidence tended to establish that the decedent was guilty of negligence contributing to his injury.

In this state contributory negligence is a matter of defence. The burden is cast upon the person setting it up to establish it. Of course, if it appears from the plaintiff's case that he was guilty of negligence contributing to his injury, it is sufficient to warrant the court to take the case from the consideration of the jury. In *Pennsylvania Railroad Co.* v. *Middleton,* 57 *N. J. L.* 154, the rule is stated thus: "In an action where the gravamen is the negligence of the defendant, on a motion to nonsuit on the ground of contributory negligence of the plaintiff, or the plaintiff's intestate when death ensues, the contributory negligence must clearly appear, as a conclusion of fact, or by necessary exclusive inference, from the proof which is adduced by the plaintiff." To the same effect is *Suburban Electric Co.* v. *Nugent,* 58 *Id.* 658.

And this court, in *Brewster* v. *New York Central Railroad Co.,* 80 *N. J. L.* 447 (at *p.* 451), said: "That there is no presumption of negligence upon the part of a highway traveler arising from the mere occurrence of his collision with the railroad train at its crossing over a highway, and that to justify a nonsuit his contributory negligence must clearly appear, conclusively as a fact, or by necessary exclusive inference from the plaintiff's evidence, and where the evidence, when the plaintiff rests, leaves the contributory negligence of the plaintiff in doubt, the determination of the question must be submitted to the jury." See *Danskin* v. *Pennsylvania Railroad Co.,* 79 *Id.* 526.

The opinion of the court bases its conclusion that the deceased was guilty of contributory negligence upon the ground

238    COURT OF ERRORS AND APPEALS.

Aquino v. Morris County Trac. Co.    93 N. J. L.

that if the deceased had looked when on the crossing he could have seen the car approaching. This is substantially a finding by the court, as a fact, that the deceased did not look before attempting to cross the track. But is not this finding, in view of the evidence in this case, clearly an usurpation of the functions of a jury? I think it is. Whether the deceased might have seen a car approaching in time to have avoided being struck, as developed by the testimony, depends largely upon the conditions which confronted him.

The motorman's story is that he dimmed the headlight of his car when he was about two hundred and fifty feet from the crossing, and used an incandescent light as a substitute, and which only permitted him to see about twenty feet ahead, and that when he reached the crossing he saw the deceased sitting on the track about a car length ahead, and that he immediately put on his brakes and the reverse, and that, notwithstanding the use of these appliances, the car went a distance of one hundred and sixty-five feet, which indicates that the car must have been propelled at an excessive and dangerous rate of speed to and over the crossing—at least a jury might have found so.

There is no proof when the deceased got on the track, and it may very well be that he reached there when the headlight was dimmed, and that in looking the car appeared to him to be far enough away to warrant an ordinary prudent person to make the attempt to cross the track. The decedent was not bound to anticipate that the car was running at such a high rate of speed that he could not cross the track safely. A jury would have been justified to infer that in the dark the deceased might have been misled as to the speed at which the car was being run; and that the deceased being at a crossing where there was a trolley station he might well have believed that the car was approaching at a moderate and safe rate of speed. The law does not fix the number of feet that a car must be away before a pedestrian may cross a track or street without being chargeable with contributory negligence. *Bauer* v. *North Jersey Street Railway Co.*, 74 N. J. L. 624. I am mindful of the fact that the motorman testified that

the deceased was sitting on the track on the defendant's right of way when he was struck, and, of course, if that testimony is true, the deceased was a trespasser, and the plaintiff's right to a recovery would be barred by that fact alone. But whether the testimony of the motorman was true or false in that respect was a jury, and not a court, question.

As has already been pointed out, the truth of the motorman's story as to where the deceased was at the time he was struck by the car was challenged by the witnesses who testified to circumstances, such as blood spots on the ties, track and ballast within three feet of the public crossing, which unerringly pointed to a convincing probability that the deceased was struck on the public crossing, and not at a place where the motorman says he saw the deceased. Moreover, the motorman was a witness deeply interested in the outcome of the trial, for the reason that the death of the plaintiff's intestate was charged as a result of the motorman's negligent act and might therefore have subjected him to a criminal prosecution, and, hence, it was peculiarly within the province of a jury to consider whether or not he labored more or less under a strong inducement to tell a tale most favorable to himself and to exonerate him from blame.

Without the motorman's story there is no direct proof where the deceased was when he was hit by the car. If the jury believed that the motorman had told an untruth as to where the deceased was when the car struck him, it would have a right to believe that the witness was untruthful in other respects. Beside the silent and cogent testimony of the bloody spots on the track within three feet of the crossing, which contradicts the motorman's testimony as to the place where the man was struck, and the circumstances connected with it, the only person who could have given positive testimony on that subject was dead. This court, in *Clark* v. *Public Service Electric Co.*, 86 *N. J. L.* 144, speaking through the Chancellor (at *p.* 151), said: "The rule seems to be, as stated in 38 *Cyc.* 1570, namely, that a verdict will not be directed where the only person who could have contradicted the witness is dead."

The essential question, in the present case, was not whether the deceased if he had looked would have seen the car, as stated in the majority opinion, but whether he could have seen it in time to have avoided the injury, if the car was being propelled at a safe rate of speed and he had exercised ordinary care. This was certainly a jury question. There is absolutely no proof to support the conjecture in the prevailing opinion that the deceased did not look, nor is there any proof that the car with its headlight dimmed could be seen at a safe distance from the crossing by a person about to cross, or that if the deceased had looked he could have seen the car in time to have avoided his injury. A jury could have reasonably drawn inference from the evidence to the contrary. And that being so, a jury question was presented.

For the reasons given I vote to reverse the judgment of the court below.

Mr. Justice Black concurs in this dissent.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, SWAYZE, TRENCHARD, PARKER, BERGEN, MINTURN, WHITE, HEPPENHEIMER, WILLIAMS, TAYLOR, GARDNER, JJ.    12.

*For reversal*—KALISCH, BLACK, JJ.    2.