therein finally settling the account of the trustees and determining all questions as to the ownership of the trust property, a special proceeding, in which the beneficiary seeks to compel the trustee to account and in which the assignees are not parties, so that there could be no decree which would bind all the parties having or claiming an interest in the fund, should have been stayed in the trial court until final judgment in the other action in which the accounting was to be had.

[Ed. Note.—For other cases, see Action, Cent. Dig. §§ 744–751; Dec. Dig. § 69.*]

Appeal from Special Term, New York County.

Action by Lawrence E. Brown, as substituted testamentary trustee, against Charles A. Robinson, individually and as trustee, and others. From an order denying a stay of certain proceedings, plaintiff appeals. Reversed, and motion granted.

Argued before INGRAHAM, P. J., and CLARKE, SCOTT, McLAUGHLIN, and DOWLING, JJ.

John Ewen, for appellant.
G. E. Waldo, for respondent Robinson.
A. Delos Kneeland, for respondent Carnegie Trust Company.

PER CURIAM.   In this action the persons to whom the beneficiary has assigned an interest in the estate to which he will be entitled on arriving at the age of 25 years are made parties, and there can be a decree herein finally settling the account of the trustee and determining all questions presented as to the ownership of the trust property.   In the special proceeding (Matter of Robinson, Deceased), in which the beneficiary seeks to compel the trustee to account, and which is before this court on appeal from an order granting a motion for an accounting, these persons are not parties, and in that proceeding there can be no decree which would bind all the parties having or claiming an interest in the fund.   These persons to whom it is alleged assignments have been made would each have a right to call the trustee to account, and it is proper that the accounting should be had in one action where they are all parties.   As any party to the action can require that it be prosecuted, there seems to be no reason why the independent petition, which involves only the right of the petitioner and the questions between him and the trustee, should be proceeded with; but the accounting should be had in the action in which all persons interested in the fund are parties, and an order entered staying the special proceedings until final judgment is entered in this action.

The order appealed from should therefore be reversed, with $10 costs and disbursements, and the motion granted, with $10 costs.

⸻

COURTNEY v. NIAGARA FALLS HYDRAULIC POWER & MFG. CO.

(Supreme Court, Appellate Division, Fourth Department.   May 4, 1910.)

1. MASTER AND SERVANT (§ 119*)—INJURY TO SERVANT—NEGLIGENCE.
    An electric power company temporarily ran heavily charged wires over a raceway to test a new generator.   A servant engaged in the concrete and masonry construction department was ordered to clear out the

raceway. His working place was almost immediately under the wires which sagged, and were but eight feet from the ground. He used an iron bar, and, as he stepped back with the bar uplifted in his hand, it came in contact with the wires,.and he was killed by an electric shock. *Held*, that the servant was exposed by the master to unnecessary and hidden dangers in carrying on the work given him, authorizing a recovery.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 210; Dec. Dig. § 119.*]

2. MASTER AND SERVANT (§ 234*)—INJURY TO SERVANT—CONTRIBUTORY NEGLIGENCE—KNOWLEDGE OF DANGER.

The servant was free from contributory negligence, though he had a general knowledge of the dangers of electricity.

[Ed. Note.—For other cases, see Master and Servant, Dec. Dig. § 234.*]

3. MASTER AND SERVANT (§ 217*)—INJURY TO SERVANT—ASSUMPTION OF RISK —TEMPORARY FORGETFULNESS.

A servant who impliedly or expressly assumes a risk may not recover for personal injuries caused by his momentary forgetfulness of a known assumed danger.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 574–600; Dec. Dig. § 217.*]

4. TRIAL (§ 140*)—MASTER AND SERVANT (§ 280*)—INJURY TO SERVANT—ASSUMPTION OF RISK—QUESTION FOR JURY—EVIDENCE.

In an action for the death of a servant by his causing an iron bar in his hands to come in contact with a heavily charged electric wire, the credibility of the testimony of the electrical superintendent of the master testifying that he told decedent of the danger of electric wires and that if he came near to them he would probably be killed was for the jury, where he admitted that it was his duty to warn men who were about the wires and keep them away, and, if the jury believed the testimony, the defense of assumption of risk was established.

[Ed. Note.—For other cases, see Trial, Dec. Dig. § 140;*. Master and Servant, Dec. Dig. § 280.*]

5. MASTER AND SERVANT (§ 288*)—INJURY TO SERVANT—ASSUMPTION OF RISK —QUESTION FOR JURY.

Whether a servant of an electric power company killed by an electric shock assumed the risk *held*, under the evidence, for the jury.

[Ed. Note.—For other cases, see Master and Servant, Cent Dig. §§ 1068–1088; Dec. Dig. § 288.*]

6. TRIAL (§ 53*)—EVIDENCE—COMPETENCY.

It is not error to admit evidence competent when offered, though it subsequently becomes unimportant in view of subsequent evidence.

[Ed. Note.—For other cases, see Trial, Dec. Dig. § 53.*]

McLennan, P. J., dissenting.

Appeal from Trial Term, Niagara County.

Action by Mary B. Courtney, as administratrix of Dennis J. Courtney, deceased, against the Niagara Falls Hydraulic Power & Manufacturing Company. From a judgment for plaintiff and from an order denying a new trial, defendant appeals. Affirmed.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, KRUSE and ROBSON, JJ.

Ralph S. Kent, for appellant.

Eugene M. Ashley and Augustus Thibaudeau, for respondent.

KRUSE, J. Dennis J. Courtney,.the plaintiff's intestate (her husband), was killed by electricity while at work for the defendant. He

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

had been engaged in assisting to dislodge a rock lying at or near the edge of the race through which the water is discharged from the defendant's power plant into the Niagara river, using an iron bar for that purpose. He stepped back or away from where he had been thus engaged, with the bar uplifted in his hands. It came in contact with or so near a cable heavily charged with electricity that a short circuit was formed, a current passing or jumping from the cable to the bar, through Courtney's body and to the ground, causing his death instantly. The defendant's power house is located on the bank of the Niagara river, below the upper steel arch bridge at Niagara Falls. A new generator was being installed in a new section of the power house, then about completed. For the purpose of testing the generator, wires were temporarily run from the generator out through the side of the building, over a raceway and a 60-foot space to the ridge board of the carpenter house, so called, and thence 40 feet further to a rheostat in the river. The wires were charged with 12,000 volts of electric energy; the current being turned on and off as occasion required in testing. The accident occurred April 28, 1908, at about 4 o'clock in the afternoon. On the morning of that day at about half past 10, one of the defendant's workmen was instructed by the superintendent to tell Courtney that Mr. Schoellkopf, the defendant's president, desired him (Courtney) to clear out the raceway, that he wanted it done right away; and, after Courtney was so informed, he went to work as he was told. His working place was almost immediately under the charged wires. The wires sagged at this point so that they were but 8 feet from the ground.

One of the grounds upon which the plaintiff sought to predicate negligence was the use of a water rheostat—that is, instead of grounding the rheostat place it in the water, as was done in this case—but the trial judge eliminated that as a ground of negligence in his charge, stating that, as the evidence finally stood, it was proper to conduct the wires to the rheostat and have them end in the water. I have no difficulty in reaching the conclusion that the defendant exposed the deceased to unnecessary and hidden dangers in carrying on the work given him to do, and that he himself was free from contributory negligence.

The only serious question in my mind is that of assumed risk. The learned trial judge held, in substance, that, if the deceased had full knowledge of the dangers, momentary forgetfulness would not relieve him from the rule of assumption of risk. I think he was right. If a person either impliedly or expressly assumes a risk, I think he is not entitled to recover for personal injuries resulting to him therefrom because he may have forgotten about it. The rule of assumed risk in such case, I think, has full effect, notwithstanding such momentary forgetfulness, although the circumstances may be such as not to make him guilty of contributory negligence. Tested by this rule, I think the defendant established that the deceased assumed the risk, if the testimony of the defendant's electrical superintendent is to be taken as absolutely true. He in effect testified that he told the deceased of the danger of this heavily charged electric wire, and that, if he came within 20 inches of the wires, it would probably kill him; but the credibility

of his testimony was for the jury. He admitted that it was his duty to warn men who were about the wires and keep them away. While I think the evidence fairly shows that the deceased had a general knowledge of the dangers of electricity, I think it was a question whether he fully knew and appreciated the risk of the dangerous situation in which he was placed in carrying on his work. He had been in the employ of the defendant for several years as foreman of concrete and masonry construction; but whether he knew that the wires were so heavily charged and that the electric current would jump, or even that the current was on at the time of the accident, and all the other hidden dangers to which he was subjected, was, I think, a question of fact. The circumstances show, as it seems to me, that the bar did not come in actual contact with the wire. In the first place, if it had, the bar itself would probably have shown more evidence of burning than it did; and, in the next place, the evidence is practically undisputed that a current of this high tension would jump from the wire to the bar, going to the ground. While I do not think it would jump so far as the superintendent claims he told the deceased it would jump (he himself says that it would not, and he claims he only told that to the deceased as a matter of caution), yet practically all the witnesses sworn upon the subject say that it would jump from an inch to two inches or more. If so, it is not unreasonable to conclude that the current would jump to the bar as soon as it came near enough. Even if the deceased was moving the bar toward the wires, the current would probably move more rapidly than the bar.

As regards the claim that errors were committed in the admission of evidence, much of that relates to the water rheostat. When admitted, the evidence was competent, although it became unimportant later, as it ultimately appeared that it was proper to make the test with the water rheostat, and as the trial court held.

I think the case was properly submitted to the jury, that the evidence sustains the verdict, and that the other questions urged upon our attention are insufficient to warrant a reversal of the judgment.

The judgment and order should be affirmed, with costs. All concur, except McLENNAN, P. J., who dissents upon the ground that as matter of law the defendant was not shown guilty of actionable negligence, that the deceased assumed the risk, and was guilty of contributory negligence.