[Civ. No. 22393.   Second Dist., Div. One.   Nov. 27, 1957.]

MARIANO GARCIA, Appellant, v. SAN GABRIEL
READY MIXT (a Corporation) et al., Respondents.

Schell, Delamer & Loring for Respondents.

DRAPEAU, J.*—Plaintiff, Mariano Garcia, was laying concrete foundations under an old house that had been jacked up a few feet.

Defendant, Albert C. Strinz, owned a truck that had been leased, together with himself as driver, to defendant San Gabriel Ready Mixt, a corporation.

Upon the truck was a large barrel-shaped tank, to hold concrete mix for delivery to customers of the corporation. The tank turned round and round, to keep the cement, water, and other ingredients of the mix, in motion.

Mr. Strinz brought his truck to the house where Mr. Garcia was working. Mr. Garcia showed Mr. Strinz where he wanted some of the cement poured, on the west side of the building. The pouring was done by means of a chute attached to the rear end of the truck. Mr. Garcia held the chute and Mr. Strinz operated the truck.

After this pouring was finished, Mr. Strinz took his truck into the street, and backed it into a driveway on the east side of the building. When he got near to the place where this cement was to be poured, he got out of the cab of his truck and looked around, and told Mr. Garcia to hold the chute until it reached the place where the cement was to go. Neither

*Assigned by Chairman of Judicial Council.

man understood much that was said by the other, for Mr. Garcia didn't speak much English.

The chute was of metal, and was designed to convey cement mix from the tank to foundation forms. The chute was in two parts, one fastened to the rear of the truck; the other was an extension that slipped inside the first, along a flange that held it so that it would go forward or backward. One of the witnesses described it as telescoping.

The extension piece was not of a standard type or design used by original equipment manufacturers. At the time Mr. Strinz purchased the truck, the extension piece was broken and was in the corporation's yard. Mr. Strinz put a new ''ear'' or flange on it, and a handle, fitted it as it was used by Mr. Garcia, and fastened it to his truck. The dangerous feature of the chute was that the extension piece would naturally come back against one's thumb if he were holding the handle and if the truck backed into an immovable object.

Then Mr. Strinz got into his cab, backed his truck farther up the driveway, with Mr. Garcia holding the handle of the chute, with the extension thrust out.

Unfortunately Mr. Strinz miscalculated distances, and backed his truck into the side of the house.

This caused the extension piece to violently slide backward. It caught Mr. Garcia's thumb between the handle and the extension, and caused injuries that required amputation of his thumb.

Mr. Garcia brought this action for personal injuries.

The complaint pleads two causes of action. These will be described later on in this opinion.

The trial judge granted a motion for a directed verdict as to the second cause of action, and the jury found against Mr. Garcia as to the first cause of action.

Mr. Garcia appeals from the judgment against him.

It therefore becomes necessary to examine the two causes of action; to determine whether or not it was prejudicial error to direct counsel in his argument to the jury not to mention anything connected with the second cause of action.

The first cause of action is for negligence in driving the truck.

The second cause of action is for negligent fabrication, installation and maintenance of the extension piece on the chute, and that the chute was defectively and carelessly made.

When the trial judge granted the motion for a directed verdict he said:

". . . there will be no further reference to the second cause of action in the proceedings hereafter, that is to say, during the arguments to the jury, or in my instructions, so the instructions and the argument will relate solely to the first cause of action.

"Now the case will go to the jury on the first cause of action as to both defendants."

The judgment must be reversed for two reasons.

First, it is to be presumed that counsel for plaintiff obeyed the judge's direction. Therefore plaintiff was denied the right of argument as to the alleged negligence which was part of the second cause of action, and which was also part of the first cause of action. This was an abuse of discretion which denied appellant a fair and impartial trial.

Secondly, the issues raised by the two causes of action involved facts that should have been submitted to the jury as to both of them.

The motion was granted upon the ground that "no evidence has been introduced of any improper construction or fabrication, or any right of the plaintiff against either of the defendants upon that theory."

The facts as narrated are amply sufficient to require the issues in the second cause of action to be submitted to a jury. Whether or not the home-made chute was improperly constructed, so that it would catch the hand that held it if it was shot backward by colliding with some stationary object was for the jury to decide.

When a trial judge is called upon to rule upon a motion for a nonsuit or a directed verdict, he deals with one of the most tricky situations in the administration of our law. While in some few cases such motions are properly made and granted (*Farber* v. *Olkon,* 40 Cal.2d 503 [254 P.2d 520]), the judge must take utmost care not to invade the province of a jury as to questions of fact. For that is the sole function of a jury in this state, and it is never the function of a judge in a jury trial.

The court's power to direct a verdict is the same as its power to grant a nonsuit. (*Gish* v. *Los Angeles Ry. Corp.,* 13 Cal.2d 570, 572 [90 P.2d 792].)

The evidence is not to be weighed on review. (*Dieterle* v. *Yellow Cab Co.,* 34 Cal.App.2d 97, 101 [93 P.2d 171].)

And a verdict may be directed only when, disregard-

ing conflicting evidence and giving plaintiff's evidence all the value to which it is legally entitled, indulging in every legitimate inference which may be drawn therefrom, the result is a determination that there is no evidence of sufficient substantiality to support any verdict in favor of plaintiff. (*Sokolow* v. *City of Hope*, 41 Cal.2d 668, 670 [262 P.2d 841].)

Tried by these time-honored rules, it was clearly error for the trial judge to direct a verdict in this case.

As these issues will have to be tried again, some questions raised on the first trial invite attention.

█ 1. However many instructions on assumption of the risk may be given, and however they may be worded, one essential is that the jury be told that a person must know what risk he assumes.

Mr. Garcia is a Mexican who doesn't understand the English language, at least not very well. Any trial lawyer who has had to deal with this situation knows how difficult it is to get to a jury through an interpreter the real facts about which such a witness is testifying. The barrier of language is a real one.

The crucial questions in this respect were whether or not Mr. Garcia really knew the danger of holding the chute with the handle, and whether or not he understood what Mr. Strinz told him to do—if he was warned of the danger involved.

█ 2. The paragraph in the contract between Mr. Strinz and the ready mix corporation, with its reference to insurance, was properly kept from the jury.

3. The instruction relative to unavoidable accident was not improperly given. (*Parker* v. *Womack*, 37 Cal.2d 116 [230 P.2d 823].)

4. The instruction as to the liability of defendant San Gabriel Ready Mixt should have been given, subject to the usual qualification that it was a question of fact for the jury. In the facts in this case, a jury can hold that this corporation is equally liable with the driver of the truck.

The judgment is reversed.

White, P. J., and Fourt, J., concurred.

A petition for a rehearing was denied December 19, 1957, and respondents' petition for a hearing by the Supreme Court was denied January 23, 1958.