## 19192

Eugene CARROLL, Respondent, v. D. W. WILSON, Appellant

(180 S. E. (2d) 198)

*Messrs. Young, Clement & Rivers*, of Charleston, *for Appellant,*

*A. Arthur Rosenblum, Esq.*, of Charleston, *for Respondent,*

March 24, 1971.

Moss, Chief Justice:

The respondent, Eugene Carroll, sought in this action to recover against the appellant, D. W. Wilson, both actual and punitive damages for personal injuries allegedly sustained from an explosion on an inboard-outboard motor boat owned by the appellant. In the complaint it is alleged that the respondent was severely burned by the explosion and such was proximately caused by the negligence and recklessness of the appellant, his agents and servants, in allowing gasoline cans to be filled inside the boat, and in failing to warn the respondent thereof, and in operating an electric tilt motor within the boat while the respondent was connecting wires near the boat's engine when he knew or should have known that to do so would cause a spark likely to ignite the gasoline fumes present in the boat.

The appellant, by his answer, denied any negligence on his part and alleged that the respondent's injuries were proximately caused by his own negligence and contributory negligence in working on electrical equipment located within the boat when he knew or should have known that it was dangerous to do so when gasoline fumes were present and likely

to be ignited during the course of his work. The appellant also filed a counterclaim against the respondent for damages to his boat.

This case came on for trial before The Honorable William L. Rhodes, Jr., presiding judge, and a jury, at the 1970 February Term of the Court of Common Pleas for Charleston County. At the conclusion of all the testimony the respondent withdrew his claim for punitive damages. The jury returned a verdict in favor of the respondent for actual damages. Timely motions for a nonsuit and a directed verdict were made by the appellant and overruled. This appeal is from the denial of such motions. The appellant contends that the trial judge erred in failing to hold as a matter of law that (1) there was no evidence of negligence on his part, and (2) the respondent was guilty of contributory negligence in failing to use any precaution for his own safety.

The question of whether or not there was error in refusing the motions of the appellant for a nonsuit and a directed verdict requires us to consider the testimony and the reasonable inferences to be drawn therefrom in a light favorable to the respondent. If more than one reasonable inference can be drawn from the evidence, the case must be submitted to the jury. However, if the evidence is susceptible of only one reasonable inference, the question is no longer one for the jury but one of law for the court. Ordinarily, contributory negligence is an issue for the jury and rarely becomes a question of law for the court. If the only reasonable inference to be drawn from all the testimony is that the negligence of the respondent contributed as a direct and proximate cause, then it would be the duty of the trial judge to order a nonsuit or direct a verdict. However, if the inferences properly deducible from controverted evidence are doubtful or tend to show both parties guilty of negligence and there may be a fair difference of opinion as to whose act proximately caused the injury complained of, then the question must be submitted to the jury. *Griffin v.*

*Pitt County Transp. Co.,* 242 S. C. 424, 131 S. E. (2d) 253; *Ray v. Simon,* 245 S. C. 346, 140 S. E. (2d) 575.

It appears from the record that at about 2:00 o'clock A. M., July 21, 1968, the appellant and a fishing companion, one Harris, stopped at the respondent's service station in the City of Charleston, South Carolina, to procure gas for the appellant's inboard-outboard motor boat, which they were at the time towing on a trailer. The respondent was not present at the station when the appellant arrived as he was delivering a truck to a customer, but one Davis, an employee of the respondent, was on hand to serve customers. Davis testified that the appellant asked him to fill up the boat's gas tanks but before he could do so Harris, who had climbed into the boat, took the hose and proceeded to fill the tanks with gas. This witness testified that Harris pumped gas into the permanent tanks that were built into the sides of the boat and he additionally pumped gas into five gallon gas cans which were on the floor of the boat.

Shortly-after the various gas tanks were filled, the respondent returned to the station and the appellant requested his assistance in repairing the boat's ship to shore radio. The respondent testified that he was not aware that the boat had been gassed up or that Harris had filled the five gallon gas cans while they remained in the boat, nor did he detect any spillage of gas within the boat's cockpit. The respondent stated that he climbed into the boat and proceeded, at the direction of the appellant, to attach a loose radio wire to a terminal located in the stern section of the boat. He testified that by holding the wire to the terminal with his hand the radio appeared to operate, but he needed a pair of pliers to securely fasten the wire to the terminal and sent Davis into the station for the pliers while he remained in the boat. The respondent further testified that while he was waiting for Davis to return, the boat's tilt motor, an electric motor used to change the position of the propeller, began to hum and started to run, and within a matter of seconds thereafter an

explosion occurred. The respondent gave uncontradicted testimony that the radio wire which he was holding could have in no way caused the tilt motor to operate. He also stated that when the tilt motor is in operation it would cause a lot of sparks and that the motor could be put in operation by a switch located on a panel in the cabin area of the boat where the appellant was standing at the time of the explosion. In this regard, the respondent, on cross examination, gave the following unobjected to testimony:

"Q. Now, do you know whether anybody was smoking on the boat that night?

"A. Well, I couldn't say that, sir.

"Q. Did you see anybody smoking on the boat?

"A. Well, now the only thing, when you bring up smoking, that I could mention about smoking was that the man (Harris) who was hurt in the accident with me mentioned the fact that he saw Doctor Wilson smoking a cigarette and he also saw Doctor Wilson push a red button and that's the only way I can explain that.

"Q. But you didn't see any of that yourself?

"A. I didn't see any of that myself.

"Q. And you don't know whether he saw it or not?

"A. He told me that in the hospital."

Davis testified that as he returned to the boat with the pliers he heard a noise and observed a movement of the motor with the explosion occurring immediately thereafter. This witness gave the following testimony regarding the events that immediately proceeded the explosion:

"Q. When you say it moved, did the propeller turn or the motor itself?

"A. The motor itself, you know, pulled it down like this.

"Q. And then there was an explosion?

"A. An explosion.

"Q. Could you see where Dr. Wilson was at that time?

"A. He was in the cabin just before then.

"Q. He was in the cabin?

"A. Yes, sir.

"Q. Do you know whether he was doing anything with his hands at that time?

"A. He was messing with something up front in the cabin. I don't know what it was."

Harris, who testified on behalf of the appellant, stated that he operated the gas hose and filled the boat's gas tanks as well as the two five gallon gas tanks. He testified that he filled the five gallon gas cans while they remained in the boat, however, he denied that any of the gas overflowed. He further stated that he was aware of the presence of gas fumes in and around the boat and that the fumes were especially noticeable in the area of the boat's motor. Harris testified that at the time of the explosion the appellant was in the boat's cabin area and the respondent was attempting to secure the radio wire. He stated that he saw a spark just prior to the explosion. This witness denied hearing a motor running just prior to the explosion, as was testified to by the respondent and Davis, and he also denied seeing the appellant push the tilt motor switch; however, he did admit that he gave a deposition in which he stated that the appellant pushed the tilt motor switch just prior to the explosion. This witness further testified that at the time of the explosion neither he nor the appellant were smoking. It was his opinion that the respondent was aware of the fact that the tanks had just been filled with gasoline. Harris admitted that he did not tell the respondent that the five gallon gas cans had been filled with gasoline while they were in the boat.

The appellant, testifying in his own behalf, admitted that he requested the respondent's assistance in repairing his ship to shore radio. He also testified that the respondent knew that the gasoline tanks in the boat had just been filled when he was attempting to secure the radio wire. The appellant said that he heard a buzzing noise just prior to the explosion but denied pushing the tilt motor switch, even though he was in the cabin area of the boat and had access to the switch.

542

There is evidence from which the jury could conclude that the boat had gasoline or gasoline fumes in its bilge. The evidence is conflicting as to what or whose act or acts caused the gasoline to explode. Therefore, in the light of the factual situation as reflected in this record, it is our opinion that there are two inferences the jury could have reasonably deduced from the evidence as to the cause of the explosion. One such inference is that the appellant pushed the tilt motor switch causing a spark to emit and ignite the gasoline. The other inference is that the respondent while working on the boat's radio, failed to use due care and precaution for his own safety, and as a result thereof improperly handled an electrical wire causing a spark which, in turn, ignited the gasoline.

We conclude, because of the conflicting inferences of which the evidence to which we have referred was susceptible, the trial judge properly submitted the issues of negligence and contributory negligence, including the question of proximate cause, to the jury.

The exceptions of the appellant are overruled and the judgment below is,

Affirmed.

LEWIS, BUSSEY, BRAILSFORD and LITTLEJOHN, JJ., concur.