[L. A. No. 22812.   In Bank.   Nov. 10, 1953.]

JEAN SOKOLOW et al., Appellants, v. CITY OF HOPE
(a Charitable Corporation), Respondent.

Trope & Trope, Eugene L. Trope and Sorrell Trope for Appellants.

Moss, Lyon & Dunn, Richard B. Coyle and Henry F. Walker for Respondent.

SCHAUER, J.—Plaintiffs, husband and wife, appeal from an adverse judgment entered upon a directed verdict in their action to recover damages resulting from personal injuries suffered by plaintiff wife[1] when she tripped and fell to the floor. We have concluded that the evidence is sufficient to support a verdict in plaintiffs' favor, and that the judgment should be reversed. Purported appeals from the verdict and from an order denying plaintiffs' motion for a new trial, being from nonappealable orders, must be dismissed. (*Sawyer v. Sunset Mut. Life Ins. Co.* (1937), 8 Cal.2d 492, 501 [66 P.2d 641].)

The only defendant is City of Hope, a California corporation and charitable organization. On March 4, 5 and 6, 1950, the "Central Jewish Committee" (hereinafter sometimes termed the committee), which the record indicates was formed as an "auxiliary" of defendant, held an annual "Town Fair" at the Shrine Auditorium in Los Angeles, which the committee had rented for the occasion. The net proceeds of the fair were to be given to defendant. Plaintiff's fall occurred while she was acting as a volunteer waitress at the fair, serving foods and coffee.

Defendant's motion for a directed verdict was made upon the grounds, among others, that "there is no showing or evidence of any negligence on the part of this defendant which

---

[1] Unless otherwise stated, the designation "plaintiff" will hereinafter refer to the injured wife.

670

was the proximate cause of the accident in question," and that "there is no evidence that the defendant or its agents, if any, exercised any control over the Town Fair [of 1950] or had a right to exercise any such control, . . . [or] that the Central Jewish Committee was, at the time of the accident in question, acting as the agent of the defendant City of Hope." The trial court stated, as the ground for granting defendant's motion, that "The Court feels that the agency has not been satisfactorily shown to hold the City of Hope as a corporation liable for the accident that the evidence shows took place."

Inasmuch as the motion for a directed verdict presented to the trial court the grounds both of insufficiency of evidence to show negligence constituting a proximate cause of the accident and of like insufficiency of the evidence to establish any agency connection of the committee with the defendant, the judgment predicated upon such verdict will be affirmed if the court's action was proper upon either of such grounds. (See *United Air Services, Ltd.* v. *Sampson* (1938), 30 Cal. App.2d 135, 138 [86 P.2d 366].)

As stated in *Burlingham* v. *Gray* (1943), 22 Cal.2d 87, 94 [137 P.2d 9], "A court may direct a verdict only when, disregarding conflicting evidence and giving plaintiff's evidence all the value to which it is legally entitled, indulging in every legitimate inference which may be drawn therefrom, the result is a determination that there is no evidence of sufficient substantiality to support a verdict in favor of the plaintiff. [Citations.] (See, also, *Raber* v. *Tumin* (1951). 36 Cal.2d 654, 656 [226 P.2d 574] [nonsuit] ; *Martin* v. *Food Machinery Corp.* (1950), 100 Cal.App.2d 244, 252 [223 P.2d 293] [rule same on nonsuit and on directed verdict motions].)

Thus viewing the evidence in the light most favorable to plaintiff, it appears that in performing work as an unpaid volunteer waitress plaintiff customarily stood behind a table (sometimes termed a "booth") some 30 feet long by 4 feet wide and passed food and coffee across the table to her customers. Other similar tables were set up in the same room. To provide fuel for cooking, an exposed gas pipe line had been installed, running along the surface of the floor and underneath the tables. Areas some 3 to 4 feet wide existed between the ends of plaintiff's table and the ends of the tables nearest thereto ; in such areas no covering or other device was installed to prevent tripping over the gas pipe running along the floor. A vice-president of the committee testified that

"I am the chairman for installing Town Fair . . . for the
City of Hope," including the booths or tables and "the gas
pipe installations for heat . . . And for serving coffee and
the like"; that for 14 years he had supervised installations
of the gas pipes, which had always been "laid the same way,"
although in previous years exposed areas of the pipe had been
covered with boards or a "ramp" to prevent tripping; for
the 1950 Town Fair (during which plaintiff was injured) he
had not, because he was called away by the death of his
wife, given orders to his "working group . . . regarding any
installations of the pipe or covering the pipe."

Plaintiff's accident occurred on Sunday, March 5. She
testified, "Well, it was between 2 and 3 o'clock in the after-
noon and the crowd was very big and everyone wanted to eat
at the same time. They all come and clamored for food and
they wanted it so I served—I had a party of about ten and
I served them sandwiches of different kinds; and then they
went to sit down at the table further down than the table
where we worked. And while standing there and working,
one man hollered out, 'Hand me a cup of coffee, please.'
And I took the cup and the urn was right near me with the
coffee already done. I took that cup of coffee and I was
going out [around the corner of the table] to hand it to the
man because they were at the table; and as I reached the
corner of the stand wherever the table was, I felt I was
falling. I tripped on something. I felt I was falling and
I tried to prevent myself, but I couldn't. That is all I
know . . . Until after they woke me up. I fell. I don't
know what happened . . . I didn't know what I fell over
. . ." Plaintiff also testified that "I can't say whether"
the floor was made of concrete or wood. Mrs. Greenberg
testified that she was working beside plaintiff, behind the
same table; that "I was standing there making those ham-
burgers, and Mrs. Sokolow was standing and she was drawing
the coffee. And as she turned, I seen her fall"; that plaintiff
as she was going out to serve the coffee fell in the area be-
tween the end of her booth or table and that of the next
table; that the witness had had "occasion to go through the
same area that day . . . and I almost fell myself . . . I al-
most tripped."

The record discloses no other witnesses to the fall and no
other evidence as to its cause. Defendant urges that plaintiff
has thus failed to produce any evidence from which a jury
could determine what or whose negligence was responsible for

the fall, that "Under the evidence, she could as easily have tripped and fallen by reason of twisting her foot in turning or caught her foot against the table leg or tripped upon her dress or apron or other apparel, etc.," and that any verdict in favor of plaintiff would necessarily have been founded upon guess, conjecture and speculation as to the proximate cause of her fall. It appears, however, that plaintiff's evidence as to proximate cause is closely analogous to that which the majority of this court held, in *Blumberg* v. *M. & T. Inc.* (1949), 34 Cal.2d 226, 229 [209 P.2d 1], would support an inference that plaintiff's "left heel became wedged in the [floor] mat . . . , causing her to fall." In that case, in which plaintiff fell on a large mat in front of the elevators of an office building, while walking with head erect, watching her way, plaintiff testified in part, ". . . I remember taking a few steps and then all of a sudden . . . there was a feeling as though something held me down and right with that simultaneously my head was hitting this terrazzo floor and someone called out. It was all in one, this blow here; I just remember going down and cracking my head"; plaintiff had no "sensation as if" her foot had slipped or of her ankle having turned. The only other witness to the accident simply saw plaintiff fall ". . . absolutely straight as though she had had something hold her or pull her . . . She fell in one straight piece . . . her knees didn't go down first, her arms didn't go down first . . ." (P. 227 of 34 Cal.2d.) In the case now before us, although no witness stated that plaintiff tripped over the gas pipe, we are of the view that an inference that it was such gas pipe that she tripped over is permissible. As set out above, plaintiff, herself, testified that she tripped over something; it was shown that the exposed gas pipe ran along the floor under the tables and between the ends of the tables; and it was further shown that it was between the ends of two of the tables that plaintiff tripped and fell. Defendant makes no contention that the exposed condition of the pipe did not constitute negligence. It follows that plaintiff's evidence was sufficient to support a verdict so far as concerns the question of proximate cause.

The issue remains as to whether the evidence would support a finding that the Central Jewish Committee in its activities in connection with the town fair was acting as the agent of defendant City of Hope. The evidence bearing on this issue is substantially as follows:

The committee vice-president who was "chairman for in-

stalling Town Fair, and picnics for the City of Hope," testified that "we install stalls for all kind[s] of merchandise, to sell it under the name of the Central Jewish Committee for the City of Hope; and to sell it we get all the stuff free. We sell it and give the money to the City of Hope." In answer to the question, "In what way is the Central Jewish Committee, of which you are an officer, related or connected to the City of Hope, the corporation?" the witness stated that "We are auxiliary over thirty year[s] to the City of Hope . . . [and act] at their direction. We only work for the City of Hope . . . The City of Hope is a situation like this: They have about 25 auxiliaries all over the United States and the only function they have, the auxiliaries, is to get money for sick people for the City of Hope . . . [T]he function of the Central Jewish Committee is a fund-raising group for the City of Hope . . . [W]e were in conjunction with the City of Hope and the office which the City of Hope use on all occasions to raise the money." The City of Hope gave "a charter to the Central Jewish Committee to operate for it . . . To act on its behalf . . . I understand the relationship like this: That we work as an independent organization for the City of Hope, under the City of Hope Charter." The charter was available but was not offered in evidence. The committee leased the Shrine Auditorium in which the fair was held, and after deducting expenses the "proceeds from the Town Fair are then turned over to the City of Hope." Outside the hall at the 1950 fair the committee put up a sign reading, "Town Fair running by the Central Jewish Committee for the City of Hope." The City of Hope also had "different branches" or "auxiliaries" engaged in "fund-raising activity" in Los Angeles, some but not all of which were "under the Central [Jewish] Committee"; at the 1950 fair some 26 to 30 separate groups "were gathered there under the auspices of the Central Jewish Committee for the Town Fair"; plaintiffs were members of one of such groups, called the "Cleveland Friendly Society," which it was testified "is an organization to do charity, to help, to work and make money and give it to charitable institutions."

Plaintiff had participated in the "Town Fairs" in previous years, in response to written invitations. The week preceding the trial herein plaintiff received an invitation to the 1952 fair; it was on a letterhead commencing "CITY OF HOPE A Free National Medical Center Under Jewish Auspices"; be-

neath these words appeared "CENTRAL JEWISH COMMITTEE." The invitation was signed by "I. Levitt, President" of the committee,[2] and was "something like" the "type of invitation" plaintiff had received in years prior to her accident; "they make an urgent plea. During the year we get several letters, come to meetings, and so forth." In addition, prior to the 1950 fair, "an officer of the City of Hope came to our [i. e., Cleveland Friendly Society] meeting before the Town Fair and asked if we will participate in having a booth, as we had every year for 10 years past, and we consented to work." Plaintiff was not an officer of the committee and had no knowledge concerning "arrangements" or "contracts, anything of that sort between the City of Hope and the Central Jewish Committee," but testified that "I know we worked for the City of Hope. I didn't know anybody else." Plaintiff husband testified that "I understand that these [written] invitations are the usual invitations that would be for the workers of the different charities to be invited through," rather than an invitation to attend the fair and spend money there. The evidence also shows that the committee and defendant City of Hope have the same address in the city of Los Angeles, and that the written lease of the Shrine Auditorium for the 1950 fair was entered into by the committee as lessee rather than by defendant City of Hope, which was not a party thereto or mentioned therein.

The statement is frequently found in the cases that "The fact of agency where it rests in parol may be established at the trial by testimony of the agent himself." (*Boone* v. *Hall* (1950), 100 Cal.App.2d 738, 742 [224 P.2d 881], and

---

[2] The invitation reads as follows:

"Dear Friends:

"The Town Fair needs your support more than ever, and each meeting from now on becomes even more important then the one before.

"The victims of cancer and tuberculosis are depending on us and we must not fail them. The money that we raise at the Town Fair will supply the needed food, medical attention, and care that will enable them to return to their loved ones.

"A regular meeting of the Central Jewish Committee will be held:
"THURSDAY EVENING — JANUARY 24th — 8 P. M.
"VLADECK CENTER — 126 N. ST. LOUIS ST.

"The sponsors of this meeting will be the Warsaw Young Men's Society and Ladies Social Club. They cordially invite everyone to attend and enjoy an evening of entertainment and refreshments.

"Hoping to see you at the meeting Thursday evening, I am

"Sincerely yours,
"/s/ I. Levitt
"I. Levitt,
"President"

cases there cited; *Kast* v. *Miller & Lux* (1911), 159 Cal. 723, 727-728 [115 P. 932]; *Montgomery* v. *Dorn* (1914), 25 Cal. App. 666, 671 [145 P. 148]; see, also, *Mayfield* v. *Fidelity & Casualty Co.* (1936), 16 Cal.App.2d 611, 617 [61 P.2d 83]; *Raftis* v. *McCloud River Lbr. Co.* (1917), 35 Cal.App. 397, 401 [170 P. 176]; *Lusitanian-American Development Co.* v. *Seaboard D. C. Corp.* (1934), 1 Cal.2d 121, 127 [34 P.2d 139].)

Here, although there is no affirmative evidence that the agency relationship asserted to exist between defendant City of Hope and the committee rests in parol rather than in written form, nevertheless the testimony of the witness Goldsmith, who was vice-president of the committee, as to the relationship between defendant and the committee, was received without objection by defendant. It is our view that his statements that the committee acts at defendant's direction and that "We only work for the" defendant and that "we were . . . the office which the City of Hope use[d] on all occasions to raise the money," would support an inference that defendant held "the essential characteristic of the right of control" (*Edwards* v. *Freeman* (1949), 34 Cal.2d 589, 592 [212 P.2d 883]) over the committee's activities, sufficient to constitute an agency relationship. Further evidence in support of the inference of agency is the testimony of plaintiffs as to the invitations and urging directed to them from defendant City of Hope to participate and work at the fair. It follows that the trial court erred in directing a verdict in favor of defendant and that the judgment based thereon must be reversed.

A further contention advanced by plaintiffs is that they were erroneously refused permission to examine one Isadore Levitt, president of the Central Jewish Committee, under the provisions of section 2055 of the Code of Civil Procedure.[3] Defendant points out that neither Levitt nor the committee was a party defendant and urges that Levitt did not bear such relationship to the sole defendant, City of Hope, as would entitle plaintiffs to examine him under section 2055. We deem it unnecessary to pass upon this contention at this time, inasmuch as upon a new trial other and different foundational

[3]When this case was tried, in 1952, section 2055 provided: "A party to the record of any civil action . . . or a person for whose immediate benefit such action . . . is . . . defended, or the directors, officers, superintendent, member, agent, employee, or managing agent of any such party or person, . . . may be examined by the adverse party as if under cross-examination . . ."

evidence may be developed bearing upon the agency relationship between defendant and the committee and upon plaintiffs' right to call Levitt as an adverse witness.

The judgment is reversed. The purported appeals from the verdict and from the order denying plaintiffs' motion for a new trial are dismissed.

Gibson, C. J., Shenk, J., Edmonds, J., Carter, J., Traynor, J., and Spence, J., concurred.