*See Dissenting Opinion*

Filed 4/10/23 Walker v. City of Victorville CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| JOEL WALKER, | |
| Plaintiff and Appellant, | E076679 |
| v. | (Super. Ct. No. CIVDS1817254) |
| CITY OF VICTORVILLE, | OPINION |
| Defendant and Respondent. | |

APPEAL from the Superior Court of San Bernardino County. Brian S. McCarville, Judge. Reversed with directions.

Dordick Law, Gary A. Dordick and John Upton, for Plaintiff and Appellant.

Graves & King, Harvey W. Wimer III, Michael D. Sargent and Brendan J. Coughlin, for Defendant and Respondent.

## I.

## INTRODUCTION

Joel Walker sued the City of Victorville (the City) after his wife, Teresa Walker, died from injuries she suffered when she fell while walking her dog on a sidewalk in the

1

City. The trial court granted summary judgment to the City on the ground that Joel failed to provide sufficient evidence that the sidewalk caused Teresa's fall. We reverse the judgment because a triable issue of fact exists as to what caused Teresa's fall.

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

Joel and Teresa had a usual route for walking their two approximately 80-pound Boxer dogs. While walking their leashed dogs along that route one evening, Teresa fell and hit her head. At the time, Joel was walking one dog a foot or two in front of Teresa while she walked the other one. Teresa died from the injuries she sustained from the fall five days later.

Joel sued the City for Teresa's injuries and death, alleging that the sidewalk was a dangerous condition (Gov. Code § 835). He also asserted a claim of negligent infliction of emotional distress (NIED) against the City.[1]

The City moved for summary judgment on the ground that Teresa fell because she got tangled in her dog's leash, not because she tripped on the sidewalk. The City's motion relied mostly on deposition testimony from Joel and two people who assisted Teresa after she fell.

Joel testified that he did not see Teresa fall. He explained that as he was walking one or two feet ahead of Teresa, he heard a thud, turned around, and saw Teresa on the

---

[1] Joel also sued the owners of the property abutting the sidewalk where Teresa fell for negligence. Those claims are addressed in a separate appeal.

ground crying and saying she hit her head.  Joel did not see Teresa entangled in a leash after her fall.  When Joel looked to see if anything could have caused Teresa's fall, he saw a rise in the sidewalk less than foot from where she was on the ground.

Although Teresa told Joel at the time of the incident and the days afterward that she tripped, she never told Joel what caused her to trip.  She never told Joel that she fell because she got tangled in the dog leash, and Joel never heard her tell anyone that was what caused her to trip and fall.  Joel thus "could only speculate" what caused Teresa to trip and fall.  But when asked what he thought Teresa tripped on, Joel replied that he "saw a raise in the concrete" near here.

Lisa Martinez, who lives near where Teresa fell, testified in her deposition that she saw Joel and Teresa walking their dogs while she was entertaining friends in her garage.  Shortly afterward, Martinez heard loud "cries."  Martinez went to the street and saw Teresa on the ground crying as if she had just fallen.  Martinez and her friend, Linda Carol Sullivan, went to help Teresa and Joel.  Teresa was crying and visibly upset while in a "crunched position" on the ground while Joel was trying to help and console her.  While Joel, Martinez, and Sullivan stood around Teresa, they discussed what had happened.  Teresa told Martinez that "the dogs may have tripped her or they had got tangled up in" the dogs' leashes.[2]  When asked for further clarification on what Teresa told her, Martinez answered that Teresa said that "she had thought the dogs may have

---

[2]  When the City asked Martinez for further clarification on what Teresa told her, Martinez answered that Teresa said that "she had thought the dogs may have tripped her."

3

tripped her." Teresa explained that she had stubbed her toe and hit her head when she fell but did not want medical attention. Martinez noticed that Teresa's toe was bleeding.

Sullivan testified that she was in Martinez's garage when she heard a woman screaming and crying. Martinez told Sullivan that a lady had fallen, so they went to assist her. When they approached Teresa and Joel, Sullivan asked her if Teresa needed help. As the four of them huddled about a foot apart from one another, Teresa said that "the dogs tangled her up and caused her to fall on her face." Sullivan was "not certain," but recalled Teresa repeating three times that her dogs caused her to fall. Teresa never told Sullivan that she tripped on the sidewalk. Rather, "[h]er story was consistent that she got tangled up with the dogs and fell because of them."

In his opposition, Joel argued there was a triable issue of fact as to whether the sidewalk caused Teresa's fall. Joel emphasized that Teresa fell near a 1.375-inch displacement in the sidewalk while wearing open-toed flip-flops and one of her toes was bloody after the incident, although he could not recall which one. Joel also stated in a declaration that he did not hear Teresa tell anyone, including Martinez and Sullivan, that she fell because of the dogs or their leashes and that he did not see Teresa entangled in a leash after her fall. To support his position that the displacement caused Teresa's fall, Joel submitted a declaration from Brad Avrit, an engineer, who concluded that the sidewalk displacement created a tripping hazard and caused Teresa's fall.

Along with his opposition, Joel objected to Martinez and Sullivan's deposition testimony about what they claimed Teresa told them about what caused her fall. Joel

4

argued their testimony was inadmissible on various grounds, including that it was inadmissible hearsay. The City, in turn, objected to portions of Joel's declaration and the entirety of Avrit's declaration.

The trial court overruled all of Joel's objections and sustained all but four of the City's 21 objections, the bulk of which (14) were directed to Avrit's declaration. The trial court then granted summary judgment to the City, finding that the evidence was insufficient to create a triable issue of fact as to whether the sidewalk caused Teresa's injuries. Joel timely appealed.

## III.

## DISCUSSION

Joel contends the trial court erred because there is a disputed issue of material fact as to whether the sidewalk caused Teresa's fall and resulting injuries. We agree as to Joel's first cause of action, but conclude he forfeited any argument as to his NIED claim.

We note at the outset that Joel strenuously disputes the trial court's rulings on the parties' objections. We need not decide whether they were correct because, even if they were, the trial court still erroneously granted the City's motion for summary judgment.

"A party moving for summary judgment bears the burden of persuasion there is no triable issue of material fact and is entitled to judgment as a matter of law. A defendant satisfies this burden by showing one or more elements of the cause of action in question cannot be established or there is a complete defense to that cause of action. If the defendant meets this initial burden, the opposing party must then make a prima facie

5

showing of the existence of a triable issue of material fact. [Citation.] [¶] We review the denial of a motion for summary judgment de novo. [Citation.] We strictly construe the moving party's affidavits and liberally construe the opposing party's affidavits. We accept as undisputed facts only those portions of the moving party's evidence that are not contradicted by the opposing party's evidence." (*City of San Diego v. Superior Court* (2006) 137 Cal.App.4th 21, 25.) Thus, "[w]hen deciding whether to grant summary judgment, the court must consider all of the evidence set forth in the papers (except evidence to which the court has sustained an objection), as well as all reasonable inferences that may be drawn from that evidence, in the light most favorable to the party opposing summary judgment." (*Avivi v. Centro Medico Urgente Medical Center* (2008) 159 Cal.App.4th 463, 467.) As a result, the trial court may not grant a motion for summary judgment "based on inferences . . . if contradicted by other inferences or evidence that raise a triable issue as to any material fact." (Code. Civ. Proc., § 437c, subd. (c); *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 856.)

To succeed on his first cause of action against the City, Joel must prove, among other things, that the sidewalk was the proximate cause of Teresa's injuries.[3] (*Huckey v. City of Temecula* (2019) 37 Cal.App.5th 1092, 1104.) Causation is generally a "question of fact which cannot be resolved by summary judgment" and "may be decided as a question of law only if, under undisputed facts, there is no room for a reasonable

---

[3] The City does not dispute that Joel can satisfy the remaining elements of his first cause of action. Its motion for summary judgment focused on causation, so we need not address the other elements.

difference of opinion." (*Nichols v. Keller* (1993) 15 Cal.App.4th 1672, 1687.) "Causation must be established by nonspeculative evidence," (*Kaney v. Custance* (2022) 74 Cal.App.5th 201, 212), but "[c]ircumstantial evidence is just as good as direct evidence to create a triable issue of fact." (*Hussey-Head v. World Sav. & Loan Assn.* (2003) 111 Cal.App.4th 773, 780.)

The sidewalk was the proximate cause of Teresa's injuries if it was a "substantial factor" in causing them. (*Kumaraperu v. Feldsted* (2015) 237 Cal.App.4th 60, 68.) The sidewalk was a substantial factor if it had "'an appreciable effect'" in causing Teresa's injuries. (*Ibid.*) "The substantial factor standard generally produces the same results as does the 'but for rule of causation which states that a defendant's conduct is a cause of the injury if the injury would not have occurred 'but for' that conduct. [Citations.] The substantial factor standard, however, has been embraced as a clearer rule of causation— one which subsumes the 'but for' test while reaching beyond it to satisfactorily address other situations, such as those involving independent or concurrent causes in fact." (*Rutherford v. Owens-Illinois, Inc.* (1997) 16 Cal.4th 953, 969.)

The City's summary judgment motion rested largely on Martinez and Sullivan's deposition testimony that Teresa told them that her dog(s) caused her fall or she fell because she got tangled in the leash(es). But Martinez testified that Teresa said only that she thought she "*may* have" tripped because of the dogs, not that she certainly did. More to the point, Joel testified in his deposition that Teresa never told Martinez or Sullivan (or anyone else) that she fell because of her dogs or their leashes. What Teresa said about

what caused her fall is therefore disputed and cannot prove as a matter of law that the sidewalk was not a substantial factor in causing her to fall.

The City next argued that there was no evidence that the sidewalk caused Teresa to fall because Joel did not see her fall and she did not tell him what caused her to fall. But circumstantial evidence and the reasonable inferences drawn from it can be sufficient to prove the cause of a plaintiff's fall, even if the plaintiff does not know what caused the fall or could not remember the fall. (*Kaney v.* Custance, *supra*, 74 Cal.App.5th at p. 217; *Sokolow v. City of Hope* (1953) 41 Cal.2d 668, 672 (*Sokolow*).)

Joel was walking one or two feet ahead of Teresa when she fell. When asked in his deposition if he saw what Teresa tripped on, however, Joel stated that he "saw a raise in the concrete," *less than a foot* from where she was on the ground, which suggests she tripped within feet of the sidewalk displacement. Joel also testified that Teresa was bleeding from a scraped foot after the incident and was not entangled in a leash. Martinez testified that Teresa said immediately after the fall that she had stubbed her toe and observed that one of Teresa's toes was bleeding.

On this disputed record, a jury could reasonably find that Teresa fell because she tripped on her dog (or dogs) or got tangled in the leash(es), depending on whose testimony the jury credits. (See *Edwards v. Hall* (1991) 234 Cal.App.3d 886, 900 [jury resolves credibility determinations].) But a jury also could reasonably find that Teresa fell because she stubbed her toe on the 1.375-inch sidewalk displacement while wearing open-toed flip-flops. A jury likewise could reasonably find that Teresa fell because she

8

stubbed her toe on the sidewalk *and* she tripped on her dog's leash or got tangled in it. In other words, a triable issue of fact as to causation remains for a jury to resolve.

*Sokolow*, *supra*, 41 Cal.2d 668 supports our conclusion. The plaintiff there was waitressing when she tripped and fell in between two tables, causing her to lose consciousness. (*Id*. at p. 672.) She did not know what caused her to trip and no witness saw what she tripped on, although a colleague saw her fall. (*Id*. at pp. 671-672.) "The record disclose[d] no other witnesses to the fall and no other evidence as to its cause." (*Id*. at p. 671.)

However, there was a gas pipe on the floor in between the tables where the plaintiff fell. (*Sokolow*, *supra*, 41 Cal.2d at p. 672.) Our Supreme Court held that "although no witness stated that plaintiff tripped over the gas pipe . . . an inference that it was such gas pipe that she tripped over is permissible." (*Id*. at p. 672.) The court reached this conclusion because the plaintiff "testified that she tripped over something; it was shown that the exposed gas pipe ran along the floor under the tables and between the ends of the tables; and it was further shown that it was between the ends of two of the tables that plaintiff tripped and fell." (*Ibid*.) The Supreme Court rejected the defendant's argument that the evidence that the gas pipe caused the plaintiff's fall was based on "guess, conjecture and speculation," and reversed a directed verdict in the defendant's favor because the "plaintiff's evidence was sufficient to support a verdict so far as concerns the question of proximate cause." (*Ibid*.)

9

So too here. As in *Sokolow*, there is only circumstantial evidence as to what caused Teresa's fall. No one saw what caused Teresa's fall or the plaintiff's fall in *Sokolow*, although a coworker saw the plaintiff falling. While the evidence on what Teresa may have tripped on is disputed and conflicting, it is undisputed that she tripped on something. Joel, who was about one or two feet away from Teresa when she fell, turned around and saw that the sidewalk displacement was less than a foot away from where she fell. Although the record is unclear as to where exactly Teresa fell, the only evidence on the location of the *Sokolow* plaintiff's fall was that it occurred "in between the ends of the tables" and thus near the gas pipe, which created a reasonable inference that the pipe caused the fall. If the jury credits Joel's testimony, then a reasonable inference is that Teresa fell within feet of the displacement, which creates a reasonable inference that the displacement caused her fall under *Sokolow*.

Because a jury could reasonably find that the sidewalk was a substantial factor in causing Teresa's injuries, the trial court erred in granting summary judgment to the City. (See *Savaikie v. Kaiser Foundation Hospitals* (2020) 52 Cal.App.5th 223, 229-230 ["'Generally, when conflicting inferences can be reasonably drawn from the evidence, a triable issue of fact is deemed to exist.'"]; *Pierson v. Helmerich & Payne Internat. Drilling Co.* (2016) 4 Cal.App.5th 608, 627; see also Code Civ. Proc., § 437c, subd. (c).)

Joel, however, does not mention his NIED claim anywhere in his opening brief. He therefore forfeited any argument that the trial court erroneously granted summary adjudication on the claim to the city. (*Aptos Council v. County of Santa Cruz* (2017) 10

10

Cal.App.5th 266, 296, fn. 7 ["Issues not raised in the appellant's opening brief are deemed waived or abandoned"].) As a result, we must affirm the trial court's grant of summary adjudication on the claim. (See *Bianco v. California Highway Patrol* (1994) 24 Cal.App.4th 1113, 1125 [appellant bears burden of proving prejudicial error].)

## IV.

## DISPOSITION

The judgment is reversed. The trial court is directed to enter an order denying the City's motion for summary adjudication on Joel's first cause of action and granting the motion on Joel's third cause of action. The parties shall bear their own costs on appeal.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

CODRINGTON _____

J.

I concur:


MILLER _____

Acting P. J.

11

[*Joel Walker v. City of Victorville*, E076679]

MENETREZ, J., Dissenting.

In moving for summary judgment, the defense argued that there was no evidence that the sidewalk displacement caused Mrs. Walker to fall. I agree.

No one saw Mrs. Walker fall. The only evidence of her own statements concerning the cause of the fall is that she said she tripped over the dogs or their leashes. Assuming for the sake of argument that there is conflicting evidence about whether she made those statements, there is still no evidence that she ever said that anything else caused her to fall.

Mrs. Walker's husband did not see her fall, and he said he could only "speculate" about what might have caused her to fall. He said that after she fell, he saw her on the ground "near" the sidewalk displacement, "less than a foot" away from it. But he never said where she was in relation to the displacement—behind it, in front of it, or next to it. There is no evidence that Mrs. Walker had even walked as far as the displacement before she fell. There is consequently no evidence that the displacement caused her to fall.

There is evidence that Mrs. Walker had a bloody toe after the fall, but that does not support a reasonable inference that the displacement caused her to fall. She could have tripped over the dogs or their leashes or her own feet (she was wearing flip-flops) and injured her toe in the process of falling.

*Sokolow v. City of Hope* (*Corp.*) (1953) 41 Cal.2d 668 is distinguishable. In that case, the victim said that she tripped over something, and (1) there was evidence that she

1

tripped between two tables, (2) there was evidence that there was a gas line on the ground between those tables, and (3) there was no evidence of any other potential tripping hazard between those tables. (*Id.* at pp. 670-671.) The evidence therefore supported a reasonable inference that she tripped over the gas line. In the case before us, there is evidence of other potential tripping hazards—namely, the dogs and their leashes—and no evidence that Mrs. Walker tripped after, rather than before, reaching the sidewalk displacement. *Sokolow* consequently is not controlling.

It is, of course, possible that the displacement caused Mrs. Walker to fall. But the present record contains no evidence that it did. On this record, a finding that she tripped over the displacement would be based on nothing but speculation.

For all of the foregoing reasons, I believe that the trial court correctly granted summary judgment for the defense. I therefore respectfully dissent.

MENETREZ
J.

2